```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
HAGOP GARABEDIAN,

                Petitioner-Defendant,

     -against-                                  ORDER
                                                17-CR-0217(JS)
UNITED STATES OF AMERICA,

                Respondent.
---------------------------------------X
```

FILED
CLERK

11:39 am, Jan 30, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES

For Defendant:       Hagop Garabedian, Pro Se
                     Reg. No. 86188-053
                     FCI Thomson
                     Federal Correctional Institution
                     1100 One Mile Road
                     Thomson, Illinois  61285[1]

For United States:   Burton T. Ryan, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York  11722

SEYBERT, District Judge:

Currently before the Court is the pro se motion of Petitioner-Defendant Hagop Garabedian ("Defendant") again seeking compassionate release (hereafter, the "Second C.R. Motion").[2] (See Second C.R. Motion, ECF No. 33; see also Reply, ECF No. 35; 1st

---

[1] Defendant's most recent address of incarceration was verified by using the Bureau of Prisons ("BOP") Inmate Locator, available at https://www.bop.gov/inmateloc/. (See also infra at 3.)

[2] Defendant's initial motion for compassionate release (hereafter, the "Initial Motion") (ECF No. 26), was denied by Honorable Denis R. Hurley (hereafter, the "Hurley Order"). (See Hurley Order, ECF No. 31.) After Judge Hurley's retirement, this case was reassigned to the undersigned. (See Aug. 17, 2022 Elec. Reassignment Order.)

Suppl. Motion, ECF No. 36; 2nd Suppl. Motion, ECF No. 39.[3])  The Government opposes the Second C.R. Motion.  (See Opp'n, ECF No. 34; see also Suppl. Opp'n, ECF No. 37.)  For the reasons that follow, the Second C.R. Motion is **DENIED**.

RELEVANT BACKGROUND

I.   Defendant's Underlying Conviction

On September 19, 2017, Defendant pled guilty to conspiring to distribute and possess with intent to distribute at least one kilogram of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1).  As part of the conspiracy, Defendant worked for an organized crime drug organization in Queens, New York, delivering kilos of heroin to distributors affiliated with the organization; these distributors then sold the heroin at street level through their own networks. (See Hurley Order at 2.)  Moreover, despite signing a cooperation agreement with the Government which precluded Defendant from committing additional crimes, Defendant orchestrated a series of fraudulent financial transactions victimizing numerous individuals.  (See id.)  As a result, the Government refused to issue a 5K.1 letter.  (See id.)  Thereafter, Defendant was sentenced on May 9, 2019, to 96 months'

---

[3]  When citing to Defendant's submissions, where provided, the Court uses the page numbers provided by Defendant.

Further, this Order rules upon Defendant's Supplemental Motions (ECF Nos. 36, 39), which the Court deems to be encompassed within the instant, Second C.R. Motion.

incarceration, followed by a term of supervised release. (See id.; see also Minute Entry of Sent'g Hr'g, ECF No. 23; Judgment, ECF No. 24.) Defendant's sentence was a significant downward variance from the recommended 210 to 262 months; it was made upon Defendant's motion for variance, to which the Government did not object, and granted based upon consideration of Section 3553(a) Factors. (See Stmt. of Reasons (sealed), ECF No. 25, at ECF p.3.)

Defendant is currently serving his sentence at FCI Thomson in Thomson, Illinois (hereafter, "FCI Thomson"). See BOP: Find an Inmate, Hagop Garrabbedian (BOP Reg. No. 90416-053) (identifying Defendant's location as "Thomson FCI"), https://www.bop.gov/inmateloc/ (last visited Jan. 25, 2024); (see also supra note 5). He has a scheduled release date of June 26, 2025. See id.

II. Defendant's Initial Motion

Defendant filed his Initial Motion on August 17, 2021. (See ECF No. 26.) He sought compassionate releasee "in light of his health conditions and inadequate treatment provided by FCI Gilmer", the facility where he had been housed. (Id. at 1.) He asserted the following health conditions: "heart failure, hematochezia (disease of the digestive system), benign positional vertigo, essential primary hypertension, obesity, hyperlipidemia, astigmatism, cervicalgia, a sprain of his shoulder joint (which makes it difficult for him to move around without assistance),

pulpal origin, hypokalemia, cellulitis, and a vitreous hemorrhage." (Id. at 4.)  Judge Hurley denied Defendant's Initial Motion upon three grounds: failure to exhaust his administrative remedies (see Hurley Order at 5-6); Defendant's medical conditions did not present "extraordinary and compelling reasons" especially since the BOP's medical treatment of same was adequate (see id. at 6-7 and note 5); and, consideration of the applicable Section 3553(a) Factors weighed against a sentence reduction (see id. at 7-8).

## DISCUSSION

I. Applicable Law

   A. Compassionate Release

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A); see also United States v.

Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)); see also United States v. Torres, No. 16-CR-0500, 2022 WL 538323, at *2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." (quoting United States v. Williams-Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not

restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)). Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same). "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section

3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-cr, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same); Ambrosio, 541 F. Supp. 3d at 254 (same); United States v. Reid, No. 05-CR-5596, 2021 WL 837321, at * 4 (E.D.N.Y. Mar. 5, 2021) ("Even if extraordinary and compelling reasons exist, they must outweigh the [Section] 3553(a) [F]actors to warrant sentence reduction." (citing 18 U.S.C. § 3582(c)(1)(A))). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

  B. Reconsideration

  "When deciding a motion to reconsider in a criminal case, courts in the Second Circuit generally apply 'Local Rule 6.3 standard for motions for reconsideration in civil cases.'" United States v. Harris, 2022 WL 3053710, *1 (E.D.N.Y. Aug. 3, 2022)

(quoting United States v. Zedner, No. 06-CR-717 (ADS), 2006 WL 6201757, at *3) (E.D.N.Y. Nov. 17, 2006)).  Under this standard, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995); see also Medoy v. Warnaco Empls. Long Term Disability Ins. Plan, No. 97-CV-6612, 2006 WL 355137 at *1 (E.D.N.Y. Feb. 15, 2006) ("The standard . . . is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."); Pickering-George v. Atty. Gen. of U.S., No. 10-CV-1103, 2011 WL 52363, at *1 (E.D.N.Y. Jan. 5, 2011) (Seybert, J.); accord Miller v. Smith, No. 21-CV-2949, 2021 WL 5416624, at *1 (E.D.N.Y. Nov. 18, 2021) (Seybert, J.) (same).  Motions for reconsideration are committed to the sound discretion of the district court.  See Belfiore v. Procter & Gamble Co., 140 F. Supp. 3d 241, 245 (E.D.N.Y. 2015); Hunt v. Enzo Biochem, Inc., No. 06-cv-170, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007).

II. Application

    A.   The Parties' Positions

        Pursuant to the First Step Act, Defendant again moves for compassionate release and/or the reduction of his 96-month sentence asserting he "has serious physical and medical conditions

. . . that he will never recover from, is experiencing deteriorating physical health, and has [a] substantial[ly] diminished ability to provide self-care in a correctional facility . . . ." (Second C.R. Motion at 5.) He also, once more, contends being incarcerated during the COVID-19 Pandemic is an extraordinary and compelling circumstance warranting his requested sentence reduction. (See id. at 10-12.) Defendant vaguely addresses some of the Section 3553(a) Factors, maintaining that, as demonstrated by his record of rehabilitation, he is a changed person; therefore, he neither needs to serve his full sentence to specifically deter him nor does he continue to pose a threat to the public's safety. (See id. at 34-36.)

In opposition, the Government takes the position that Defendant's Second C.R. Motion is a motion for reconsideration in which he "repeats arguments he made in his original motion, citing previously submitted evidence of his post-conviction rehabilitation and continued unsustained complaints of inadequate medical treatment." (Opp'n at 1.) Yet, according to the Government, Defendant's arguments neither meet the reconsideration standard, nor present extraordinary and compelling reasons compelling early release, nor outweigh the applicable Section 3553(a) Factors. (See id. at 1-2.)

More specifically, as to Defendant's medical conditions: The Government maintains Defendant continues failing to present

evidence that his medical conditions prevent him from engaging in normal activities of daily living. (See id. at 2.) Conversely, the Government's evidence demonstrates that, while housed at FCI Gilmer, Defendant was ambulatory and capable of self-care and had his medical conditions consistently attended to by the BOP. (See id. at 4-5 (citing Sept. 9, 2022 Affidavit of Emery McCoy, D.O, Clinical Director, FCI Gilmer, BOP, ECF No. 34-1, attached to Opp'n); see also id. at 10-11.) And, as to the applicable Section 3553(a) Factors: The Government asserts Defendant has not highlighted any change compelling a new weighing of those Factors, which Judge Hurley stated continued to counsel against granting the Initial Motion. (See id. at 5-6 (quoting Hurley Order at 7-8 (further stating "it is appropriate for the Court to consider how a reduction in sentence would undermine the aims of the Court's original sentence")); see also id. at 12-13 (elaborating why the Section 3553(a) Factors override any extraordinary and compelling circumstances Defendant could present).)

[Remainder of page intentionally left blank.]

B.  The Court's Analysis[4]

Whether construed as a new, subsequent motion seeking compassionate release or as a reconsideration of the Hurley Order, the instant Motion fails. Because Defendant is proceeding pro se, the Court liberally construes the Second C.R. Motion as a new, subsequent motion, see generally, e.g., United States v. Pilcher, 950 F.3d 39, 44 (2d Cir. 2020); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (same), and, therefore, has applied the following analysis in determining its denial.

1.  Exhaustion

In support of the instant Motion, Defendant submitted a copy of his August 16, 2021 request for compassionate release made to the FCI Gilmer Warden (hereafter, the "Initial Warden Request"). (See Ex. D, ECF No. 33-4, at ECF p.4, attached to Second C.R.

---

[4] To the extent Defendant alternatively seeks placement in home confinement (see Second C.R. Motion at 5), this Court is unable to grant such relief. United States v. Roundtree, 460 F. Supp. 3d 224, 230 (N.D.N.Y. 2020) (stating a district court "has no authority to direct BOP as to where a prisoner should serve her or his term of incarceration" (citing United States v. Kanagbou, 726 F. App'x 21, 25 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence." (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."))) (emphasis added)); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." (emphasis added)). "Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration." United States v. Wall, No. 16-CR-0533, 2021 WL 822803, at *5 (D.N.J. Mar. 4, 2021) (citations omitted).

Motion.)  His request was based upon fears of COVID-19 given his many health conditions.  (See id.)  The Warden denied Defendant's request on September 15, 2021 (hereafter, the "Initial Warden Denial").  (See id. at ECF p.2.)  Notably, to satisfy his exhaustion requirement here, Defendant initially relied upon the same Initial Warden Request and Initial Warden Denial.  (Cf. Ex. D, with Ex. 1, ECF No. 30-1, attached to Initial Motion Reply, ECF NO. 30.)  Defendant maintains such reliance is of no consequence and demonstrates he has exhausted his administrative remedy.  (See Second C.R. Motion at 33.)

Unsurprisingly, the Government disagrees.  It argues "[t]o the extent that the [Second C.R. M]otion submits new grounds not previously presented to the Warden, there is no indication that any new grounds for compassionate release have been submitted to the Warden, nor that more than 30 days have lapsed since such a request, as required."  (Opp'n at 9 (citing 18 U.S.C. § 3582(c)(1)(A)).)  Further, to the extent Defendant argues new facts exist warranting compassionate release, "those new facts or authority distinct from the arguments presented in the [I]nitial Motion are required to be subject to a new application to the Warden and subject to a separate exhaustion of administrative remedies, which has not occurred."  (Id. at 9-10 (collecting cases for proposition exhaustion not satisfied where, in subsequent

compassionate release motion, defendant did not seek relief from warden based upon new facts presented in said subsequent motion).)

In reply, Defendant disputes the Government's interpretation of Section 3582(c)(1)(A). (See Reply at 6-9.) He asserts he has satisfied his exhaustion requirement by relying upon the Initial Warden Denial since "the statute does not impose a time limit within which a defendant may move the court after having made a request to the BOP." (Id. at 8; see also id. at 7-8 (arguing statute does not require Defendant "to restart the process if he seeks the same ultimate relief from the court (as he does through [the] request to the warden) but on somewhat different, or differently articulated, grounds").) With his Reply, Defendant has also submitted a September 12, 2022 "Request for Administrative Remedy Informal Resolution Form" requesting a reduction of sentence based upon his medical conditions. (See id. at ECF pp.17-18.) Presumably, said submission was to evince satisfaction of Defendant's exhaustion requirement for the instant Motion and overcome the Government's failure-to-exhaust defense. Notably, in its Sur-Reply, the Government does not address the issue of exhaustion. Moreover, in his Second Supplement Motion, Defendant states "[m]ore than 30 days have elapsed since [his September 12, 2022] request to the Bureau of Prisons was made," thereby satisfying his exhaustion requirement. (2nd Suppl. Motion at 2, ¶ 1.)

It is well-settled the administrative exhaustion requirement applicable to compassionate release motions under the First Step Act is not a jurisdictional limitation. See United States v. Saladino, 7 F.4th 120, 122 (2d Cir. 2021). While not jurisdictional, though, "it remains a mandatory claim-processing rule that is not subject to equitable exceptions." Id. at 127 (Menashi, J., concurring). Nonetheless, the Government may withdraw its defense of non-compliance with the exhaustion requirement. See generally id. at 122. When that occurs, a court may proceed to consider the merits of a defendant's compassionate release motion. See id.

Here, given Defendant is proceeding pro se in this instance and, in its Sur-Reply, the Government did not address Defendant's claim he made a renewed request for compassionate release to the Warden, the Court construes the Government's silence on the exhaustion issue to be its withdrawal of its "'affirmative defense of exhaustion' because it believes that [Defendant] has now properly exhausted his administrative remedies." Id. In turn, presuming more than 30 days have lapsed from Defendant's September 12, 2022 relief request to the BOP without having received a response to same, the Court further presumes proper exhaustion regarding the Second C.R. Motion has been satisfied. Therefore, the Court turns to the merits of said Motion.

2. <u>Extraordinary and Compelling Circumstances</u>

While there is no dispute Defendant suffers from several medical conditions, he baldly claims these conditions are not being treated, the conditions of his confinement hinder his ability to self-care, and his conditions make it difficult for him to engage in daily activities of life. His conclusory, self-serving averments in this regard are unavailing. (<u>See</u> Garabedian Aff., ECF No. 33-3, <u>attached to</u> Second C.R. Motion.) Conversely, the Government's evidence is persuasive; in opposition to the Second C.R. Motion, it offers the Affidavit of Dr. McCoy, Clinical Director at FCI Gilmer.[5] Based upon his involvement with Defendant's medical care and review of Defendant's medical records, Dr. McCoy affirms Defendant "is currently ambulatory and capable of self-care" and "all his medical complaints and conditions are being addressed and appropriately attended to." (McCoy Aff. ¶ 2; <u>see also</u> Def.'s Nov. 3, 2022 "Male Custody Classification Form", ECF No. 36 at ECF p.9, <u>attached to</u> Suppl. Motion (describing Defendant's living skills as "good").). Moreover, as the Government aptly states:

> The arguments posited by the Defendant in his present [Second C.R M]otion and subsequent

---

[5] When Defendant filed the instant Second C.R. Motion (and his supplemental filings thereto), he was housed at FCI Gilmer. In late July 2023, Defendant filed an address-change-notification stating he is now at FCI Thomson. (<u>See</u> July 24, 2023 Letter, ECF No. 40, at 2.) Defendant has offered no evidence from his time at FCI Thomson.

> submissions [are] that his medical conditions continue, as [do] his complaints of his medical treatment. Both are mere re-statements of his initial arguments, which were rejected by the Court [in the Hurley Order], and, as seen in the affidavit of the [BOP] medical staff, unsupported.

(Gov't Sur-Reply, ECF No. 37, at 2 (citing Hurley Order, and Opp'n)); see also Hurley Order at 6 (stating several of Defendant's medical conditions were taken into account by the Court when sentencing Defendant since said conditions had been reported in Defendant's Pre-Sentencing Report).) Such restatements continue to fall short of demonstrating extraordinary and compelling circumstances warranting the sentence reduction Defendant seeks.

Additionally, Defendant's assertion that he would receive preferred, i.e., better, care outside of a BOP setting carries no weight. (See Second C.R. Motion at 8-10.) The BOP is tasked with providing "adequate care", i.e., care that is reasonable, not care that is preferable to Defendant. See generally Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) ("As the Supreme Court has noted, the prison official's duty is only to provide reasonable care." (quoting Farmer v. Brennan, 511 U.S. 825, 844-47 (1970)). Defendant has failed to contradict the Government's evidence that he is receiving adequate medical care.

To the extent Defendant argues his rehabilitation record warrants compassionate release, that argument is unavailing. (See Second C.R. Motion at 2-4, 34-35.) It is well-instilled that

Page 16 of 20

rehabilitation, by itself, can never serve as a basis for granting compassionate release. See United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *2 (E.D.N.Y. July 12, 2023) (quoting Brooker, 976 F.3d at 237-38; further citation omitted); see also id. at *8. Here, even if the Court were to consider Defendant's rehabilitation in combination with his medical conditions, because Defendant has not presented anything new warranting changing Judge Hurley's prior determination that said medical conditions do not rise to the level of extraordinary and compelling, the combination of those factors still does not satisfy Defendant's burden of showing compassionate release is warranted.

3.  The Section 3553(a) Factors

"The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary circumstances." Gotti, 433 F. Supp. 3d at 615; see also Jones, 2023 WL 8613867, at *2 ("[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"); Jones, 17 F.4th

at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actos' is 'an alternative and independent basis for denial of compassionate release.'" (quoting <u>United States v. Robinson</u>, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

<u>Johnson</u>, 2023 WL 3093617, at *12 (E.D.N.Y., 2023).

Consideration of the Section 3553(a) Factors in this case underscores that compassionate release is not warranted. As the Government persuasively argues:  the offenses of conviction--trafficking and possessing heroin--are incredibly serious (Opp'n at 12); Defendant's criminal career was lengthy, with numerous felony and misdemeanor convictions (<u>id.</u>); the imposed sentence was crafted to both promote respect for the law and provide just punishment, especially given Defendant's breach-of-trust in committing crimes while purporting to cooperate with the Government (<u>id.</u> at 13); and, given Defendant's significant criminal history, the need for deterrence weighs heavily against

compassionate release (id.). The Court concurs. Indeed, many of "[t]hese same concerns were factored by the Court into [Defendant's] original sentence"; therefore, "it is appropriate for the Court to consider [now] how a reduction in sentence would undermine the aims of the Court's original sentence." (Hurley Order at 8.) Upon that consideration, this Court finds reducing Defendant's sentence, which was already significantly below the recommended Guidelines range, will not substantially satisfy the purposes of Defendant's original sentence, since doing so would, among other things, fail to reflect the seriousness of his offense, promote respect for the law, or provide just punishment for Defendant's offense.

Hence, having considered the applicable Section 3553(a) Factors, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, which he has not, the Section 3553(a) Factors do not override those circumstances. Instead, the Court's original 96-month sentence of imprisonment continues to be appropriate to satisfy the applicable Section 3553(a) Factors.

## CONCLUSION

Accordingly, finding Defendant has not met his burden, **IT IS HEREBY ORDERED** the Second C.R. Motion (ECF No. 33) is DENIED in its entirety; and

**IT IS FURTHER ORDERED** the Clerk of Court is to mail a copy of this ORDER to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  January 30 2024
        Central Islip, New York